1   E. Jeffrey Banchero (SBN 93077)
    *ejb@bancherolaw.com*
2   Mary B. Banchero (SBN 163423)
    *mbryan@bancherolaw.com*
3   BANCHERO LAW FIRM LLP
    1 Embarcadero Center, Suite 1200
4   San Francisco, California 94111
    Telephone: (415) 398-7000
5   Facsimile: (415) 484-7029
6
7   Attorneys for Plaintiff
    MAXWELL A. GRAHAM
8
9              UNITED STATES DISTRICT COURT
10           NORTHERN DISTRICT OF CALIFORNIA
11              SAN FRANCISCO DIVISION
12
13
    MAXWELL A. GRAHAM,                    CASE NO.  3:23-cv-04865-RFL
14
          Plaintiff,                      **PLAINTIFF'S NOTICE OF MOTION
15                                        AND MOTION FOR RULE 37(e)
          v.                              SANCTIONS FOR DEFENDANT'S
16                                        FAILURE TO PRESERVE ESI;
    HONEYWELL INTERNATIONAL, INC.,        MEMORANDUM OF POINTS AND
17                                        AUTHORITIES**
          Defendant.
18
                                          Hearing Date:  September 16, 2025
19                                        Courtroom:     15
                                          Time:          10:00 A.M.
20
                                          Complaint Filed: September 22, 2023
21                                        Trial Date:      December 1, 2025
                                          Judge:           Hon. Rita F. Lin
22
23
24
25  **TO THE COURT, DEFENDANT, AND ITS ATTORNEYS OF RECORD:**

26      **PLEASE TAKE NOTICE** that on September 16, 2025, at 10 AM in the United States District

27  Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA  94102,

28

                                        -1-

1   Plaintiff Maxwell A. Graham ("Graham") will, and hereby does, move the Court for an order granting

2   sanctions for defendant's failure to preserve ESI under Federal Rule of Civil Procedure 37(e).

3        The issue to be decided is whether defendant, Honeywell International, Inc. ("Honeywell")

4   violated Rule 37(e) of the Fed. Rules of Civil Proc. by failing to preserve plaintiff's company-issued

5   laptop and cellphone and the files in plaintiff's office and, if so, what sanctions to impose.

6        This motion is based on this Notice of Motion and Motion, the Memorandum of Points and

7   Authorities, the Declaration of E. Jeffrey Banchero, the Declaration of Maxwell A. Graham, the

8   supporting exhibits attached thereto, and any written or oral argument presented at the hearing in this

9   matter.

10

11  July 3, 2025               BANCHERO LAW FIRM LLP

12

13                    By:_____/s/_____

14                         E. Jeffrey Banchero

15                    Attorneys for Plaintiff
                      Maxwell A. Graham

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.    STATEMENT OF ISSUES TO BE DECIDED .................................................................1

II.   INTRODUCTION ...................................................................................................... 1

III.  FACTS ......................................................................................................................2

    A. Graham's Efforts to Obtain Work Papers from his Office and Messages and
       other Data from his Laptop and Cellphone. ........................................................2

       1. Immediately after Discharge Graham Directs Honeywell Not to Destroy
          Documents; Honeywell Assures Him that He is Subject to a 'Legal Hold.' ................2

       2. Graham Returns his Laptop and Cellphone to Honeywell. ...........................3

       3. The Letter of December 2, 2022, Informing Honeywell that it is a
          Potential Party to Litigation.  ......................................................................3

       4. Honeywell's Response to Graham's Request for Production of Work Papers
          and the Contents of his Laptop and Cellphone: Nothing is Produced, then
          Honeywell Claims that Graham Returned Someone Else's Laptop. ............................3

       5. Lasko Testifies that Graham's Laptop and Cellphone were Destroyed
          while in Honeywell's Possession with No Attempt to Preserve their Contents ...........6

    B. The Court Orders Honeywell to Designate a Rule 30(b)(6) Representative to
       Testify Concerning the Missing Laptop, Cellphone, and Work Papers from
       Graham's Office.....................................................................................................7

    C. Honeywell Confirms that it Disposed of the Laptop and Cellphone Without
       Preserving Data ....................................................................................................9

    D. Honeywell Did Not Preserve the Signed Agreements or other Work Papers
       Graham Kept in his Office. ................................................................................ 11

IV.   ARGUMENT ........................................................................................................... 11

    A. Honeywell Did Not Take Reasonable Steps to Preserve Graham's Laptop,
       Cellphone or Files .............................................................................................. 12

       1. Honeywell Admits that it Destroyed the Laptop Without Preserving
          Its Contents................................................................................................ 12

       2. Honeywell Admits that it Destroyed the Cellphone Without Preserving Its
          Contents.................................................................................................... 13

-i-

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR RULE 37(e) SANCTIONS FOR DEFENDANT'S
FAILURE TO PRESERVE ESI                    CASE NO.  3:23-cv-04865-RFL

3.  Honeywell Admits that it Could Not Locate and Did Not Preserve Files in Graham's Office. ...................................................................... 14

B.  The Contents of the Laptop, Cellphone, and Files Cannot be Replaced .................................. 14

C.  The Loss of the Laptop, Cellphone, and Files Causes Prejudice, because it Deprives Graham of a Complete Record of Communications he had with Bach and other Honeywell Employees, and a Complete Set of Agreements ........................................ 14

V.    **SANCTIONS UNDER RULE 37(e)(1) and (2).** ................................................................. 18

VI.   **CONCLUSION** ..................................................................................................... 22

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR RULE 37(e) SANCTIONS FOR DEFENDANT'S
FAILURE TO PRESERVE ESI                                    CASE NO.  3:23-cv-04865-RFL

1
2

## TABLE OF AUTHORITIES

3

### Cases

4

 *Apple, Inc. v. Samsung Electronics Co.,* 888 F.Supp.2d 976 (N.D. Cal. 2012)............................. 14

5

*BalanceCXI, Inc. v. International Consulting LLC,* 2020 WL 6886258 (W.D. Texas 2020) ........ 17

*Fast v. GoDaddy.com LLC,* 340 F.R.D. 326 (D. Ariz. 2022) ........................................................ 14

6

*Gorman v. Douglas County Sheriffs' Office, 2024 WL 1211798* (D. Or. 2024).........................18-19

7

*John v. County of Lake,* 2020 WL 3630391 (N.D. Cal. 2020) ................................................14,18,20

8

*Jones v. Riot Hospitality Group LLC,* 95 F.4th 730 (9th Cir. 2024)...............................................11,18

9

*Meta Platforms, Inc. v. Brandtotal, Inc.*, 605 F. Supp.3d 1218 (N.D. Cal. 2022).......................... 17

*Oracle America, Inc. v. Hewlett Packard Enterprise Co.,* 328 F.R.D 543 (N.D. Cal. 2018)......... 11

10

*Paisley Park Enterprises, Inc. v. Boxill,* 330 F.R.D. 226 (D. Minn. 2019)..................................... 18

11

*Pashaie v. H77LA, LLC,* 2024 WL 4800698 at *5 (C.D. Cal. 2024)............................................ 18

12

*Porter v. City and County of San Francisco,* 2018 WL 4215602 (N.D. Cal. 2018) ................. 17,20

13

*RG Abrams Insurance v. Law Offices of C.R. Abrams*, 342 F.R.D. 461 (C.D. Cal. 2020)... 15,18,20

*Scalia v. County of Kern,* 676 F.Supp.3d 703 (C.D. Cal. 2021)............................................12,18,20

14

*Spencer v. Lunada Bay Boys,* 2017 WL 10518023 (C.D. Cal. 2017) ........................................ 17,19

15

*Valmarc Corp. v. Nike, Inc.,* 2024 WL 511244  (D. Oregon., 2024) ...............................15,18,20,21

16
17

### Statutes

Fed. Rules of Civ. Proc.  Rule 37(e) ........................................................................................1,11-21

18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR RULE 37(e) SANCTIONS FOR DEFENDANT'S
FAILURE TO PRESERVE ESI                                    CASE NO.  3:23-cv-04865-RFL

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    STATEMENT OF ISSUES TO BE DECIDED

Whether defendant, Honeywell International, Inc. ("Honeywell") violated Rule 37(e) of the Fed. Rules of Civil Proc. by failing to preserve plaintiff's company-issued laptop and cellphone, and the files in plaintiff's office and, if so, what sanctions to impose.

### II.    INTRODUCTION

When the plaintiff, Maxwell A. ("Andy") Graham ("Graham") learned that Honeywell was ending his employment, he immediately requested that the company "not destroy" any documents in his "system."  In response, Honeywell told Graham he was subject to a "legal hold."  His supervisor, David Bach ("Bach"), with whom Graham had negotiated a period of employment leading to a June 1, 2023, retirement date, believes he told Honeywell HR that he would not be surprised if Graham sued.

Despite Graham's request, the legal hold, and Bach's statement, Honeywell destroyed Graham's laptop without preserving all of its contents, and destroyed his cellphone without preserving any of its contents, including—of particular importance to this litigation—text messages between Graham and Bach.  Honeywell destroyed the cellphone after Graham's litigation-hold letter, after Graham filed the complaint, and after Graham's first set of document requests, which expressly requested communications sent by text message. Honeywell also failed to preserve files from Graham's offices, including agreements Graham signed with Honeywell.

Honeywell did not disclose its failure to preserve the laptop or the contents of the cellphone until very late in this litigation.  Because Honeywell objected to Graham's inquiries about the laptop and cellphone and continued to object during proceedings before this Court when surely it should have made disclosure, we state the facts leading to Honeywell's belated admissions on these subjects in some detail.

-1-

Under Rule 37(e), Honeywell was under a duty to preserve Graham's laptop and files and the contents of his cellphone. As a result of Honeywell's conduct, the information was lost. The information cannot be replaced or restored. The loss has prejudiced Graham. Under sections (e)(1) and (2) of the rule, Graham requests an order entitling him to inform the jury that Honeywell had a duty to preserve the laptop, cellphone, and office files and that despite this duty, information from the laptop, cellphone, and files is no longer available; an adverse jury instruction providing that the information would be unfavorable to Honeywell; and attorneys' fees and costs for this motion and related proceedings before this Court.

Graham is entitled to these sanctions, as we now show.

## III.    FACTS

### A.    Graham's Efforts to Obtain Work Papers from his Office and Messages and other Data from his Laptop and Cellphone.

#### 1.    Immediately after Discharge Graham Directs Honeywell Not to Destroy Documents; Honeywell Assures Him that He is Subject to a 'Legal Hold.'

On August 31, 2022, Honeywell notified Graham that his employment was terminated. His last day of work would be two days later. On the day he received notice, Graham sent David Bach, the executive he reported to, and Honeywell's HR department an email message. He wrote, "Please do not destroy any documents, emails, saved files, or pictures in my system." (Declaration of Maxwell A. "Andy" Graham in Support of Plaintiff's Motion for Rule 37(e) Sanctions for Defendant's Failure to Preserve ESI, filed herewith (the "Graham decl."), Exh. A; 8/31/22 email from A. Graham to D. Bach.)  Lindsey Brafford of Honeywell's HR department replied to Graham that "you are under a legal hold and are required to send back your devices to our litigation department." (Graham decl., Exh. B; 9/1/22 email from L. Brafford to A. Graham.)  Bach testified it was "highly likely" he told HR

-2-

MEMO. POINTS & AUTHORITIES IN SUPP. OF PLAINTIFF'S MOTION FOR RULE 37(e) SANCTIONS FOR DEFENDANT'S FAILURE TO PRESERVE ESI                    CASE NO.  3:23-cv-04865-RFL

that he "wouldn't be surprised if [Graham] sue[d]." (Banchero decl., Exh. Y, pp. 146:16-148:13.)

### 2.    Graham Returns his Laptop and Cellphone to Honeywell.

On September 9, 2022, Graham met Tim Lasko, Honeywell's Senior Program Manager, at Graham's Honeywell office in Roseville.  He handed his laptop and cellphone to Lasko. (Graham decl., ¶2.)  Graham looked in the office for agreements he had signed with Honeywell and other hard-copy documents that he kept in his office, but the desk drawers and filing cabinets in his office were empty.  Graham's papers were not there.  (*Id*., ¶3.)

### 3.    The Letter of December 2, 2022, Informing Honeywell that it is a Potential Party to Litigation.

On December 2, 2022, Graham's attorneys sent Brafford a letter informing Honeywell that it "is a potential party to litigation and, as such, has a duty to preserve information that may be relevant to our client's potential claims, or that may lead to the discovery of relevant evidence."  The letter directs Honeywell to preserve "data in all forms," including "documents saved on computer hard drives or on cloud servers or related devices, documents and text messages stored on cell phones * * * and data relating to the use of cell phones  * * * ." (Declaration of E. Jeffrey Banchero in Support of Plaintiff's Motion for Rule 37(e) Sanctions for Defendant's Failure to Preserve ESI, filed herewith (the "Banchero decl."), Exh. G.)

### 4.    Honeywell's Response to Graham's Request for Production of Work Papers and the Contents of his Laptop and Cellphone: Nothing is Produced, then Honeywell Claims that Graham Returned Someone Else's Laptop.

Honeywell in its initial disclosures did not produce what Graham believed were a complete set of email and text messages between Bach and himself.  Nor did Honeywell produce any of Graham's hard-copy work papers from his office in Roseville, including agreements he had signed, or documents from Graham's company-issued laptop.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In Graham's first set of document requests, he requested communications, including "text messages," relating to his employment agreement, his retirement plans, and the company's decision to end his employment before his planned retirement date.   (Banchero decl., Exh. H; Plaintiff Maxwell A. Graham's Request for Production of Documents (Set One), 4/24/24.)

Graham had difficulty obtaining documents from Honeywell in this case, because of Honeywell's repetitive boilerplate objections and the time it took for Honeywell to comply with Graham's requests.   Months passed while the parties exchanged meet-and confer letters. Honeywell produced documents slowly, in dribs and drabs.   Honeywell served its Rule 26(a)(1) disclosures in December, 2023.   It produced documents in response to Graham's Rule 34 requests in April, August, and October, 2024, and as late as January, 2025, after an order by Magistrate Judge Westmore, it was still producing documents in response to Graham's *first* set of document requests, served nine months earlier.   (Banchero decl., ¶ 6.)   In August, 2024, Graham's attorneys complained about the delays, and requested that Honeywell confirm that Honeywell's searches "include information stored on Graham's company laptop." Honeywell's attorneys did not respond to the inquiry about the laptop.   (*Id.,* ¶24, Exh. Z.)

As difficult and expensive as this was for Graham, Honeywell's delays are not at issue, except to explain why it was not until early February, 2025, that Graham's counsel, as the discovery cut-off approached, asked Honeywell again to confirm that "Honeywell included in its searches Graham's work laptop that was put on 'litigation hold' at the time of his employment termination."   (Banchero decl., Exh. I; 2/5/25 letter from E. Banchero to S. Clawson.)   Because Honeywell had not produced *any* text messages between Graham and Bach, the letter also requested that Honeywell confirm that it conducted a diligent search for text messages on Honeywell cellphones and found no responsive documents.   (*Ibid.*)

In response, Honeywell's counsel wrote that it "does not collect cell phone data from its employees as a matter of course due to the burdensome nature of this process." (Banchero

decl., Exh. J; 2/18/15 from S. Clawson to E. Banchero.)  As for Graham's laptop, the lawyer

described "an interesting twist of facts."  Honeywell had discovered, the lawyer wrote, that the

laptop Graham handed to Lasko was not Graham's laptop, but one assigned to one of

Graham's former sales associates, and "it appears that the device was wiped *before* Andy

returned it to Honeywell."  (*Ibid;* emphasis in original.)[1]

      This position was bizarre, and Graham's counsel replied that it raised serious concerns.

(Banchero decl., Exh. K; 3/13/25 letter from E. Banchero to S. Clawson.)  Graham returned *his*

laptop to Lasko; he was in possession of no other and could hardly return a laptop other than

the one he had been using.  (Graham decl., ¶2.)  To claim that the laptop was registered to

someone else and that Graham had "wiped" it before returning it was not credible.  Graham's

counsel continued:

> Graham often communicated with Bach and others by text message as well as
> email.  In particular, his communications with Bach are central to his claims in
> this litigation.  Honeywell should inform us *immediately* whether a) the contents
> of Bach and Graham's text messages on their company cell phones is currently
> available from Verizon; and b) *whether Honeywell preserved the cell phones of*
> *Bach and Graham or the text messages stored thereon, as it was required to do*
> *under the litigation hold.*

(Banchero decl., Exh. K; 3/13/25 letter from E. Banchero to S. Clawson.)  "We intend to

conduct discovery on Honeywell's conduct," Mr. Banchero wrote, and "[w]e will also notice

an additional Rule 30(b)(6) deposition based on this newly-acquired information."  (*Ibid.*)  On

March 14, 2025, Graham served a formal request for documents relating to the "storing or

preserving" of the laptop, "destroying the laptop," and "text messages, email messages, or

other data stored on" Graham's company-issued cellphone.  (Banchero decl., Exh. L.)

Honeywell responded with boilerplate objections and produced no documents.  (Banchero

decl., Exh. M.)

---

[1] All emphasis in this memorandum is added unless otherwise noted.

In a subsequent message, Honeywell's counsel replied that tracking down information regarding backup data and mobile devices would take time and, although the company "dispute[s] Plaintiff's claim that his [Graham's] conduct at the August 2022 termination meeting triggered any preservation obligations," it still had access to those files that were stored on OneDrive. The response does not mention whether Honeywell possessed Graham's or Bach's cellphones or could access data from those phones through Verizon. (Banchero decl., Exh. N; 3/18/25 email from S. Clawson to E. Banchero.) Honeywell agreed to produce Lasko for deposition, but its counsel informed Graham that the company would "object to the entirety of the Rule 30(b)(6) deposition on the grounds that it calls for information that simply is not relevant." (Banchero decl., Exh. O; 3/21/25 email from S. Clawson to E. Banchero.)

On March 25, 2025, Graham served a Notice of Rule 30(b)(6) deposition, requesting testimony from Honeywell on the chain-of-custody of the laptop and cellphone Graham returned to Lasko, Honeywell's access to text messages on Bach's and Graham's cellphones, and information about the work papers Graham stored in his office. (Banchero decl., Exh. P; Notice of Rule 30(b)(6) deposition.) Honeywell refused to produce a witness in response to the motion, serving objections on April 1. (Banchero decl., Exh. Q; Def. Honeywell International Inc.'s Objection to Plaintiff's Notice of Taking Deposition of Honeywell International, Inc.)

### 5. Lasko Testifies that Graham's Laptop and Cellphone were Destroyed while in Honeywell's Possession with No Attempt to Preserve their Contents.

While lawyers for the parties met and conferred on Graham's Rule 30(b)(6) notice, Graham conducted the deposition of Lasko. Lasko has a clear recollection of his meeting with Graham at the Roseville offices in September, 2022. He testified that he took the laptop and cellphone Graham handed to him and put them into "another office that I was storing laptops and computers in that was locked, and that's where I stored his along with probably

-6-

MEMO. POINTS & AUTHORITIES IN SUPP. OF PLAINTIFF'S MOTION FOR RULE 37(e) SANCTIONS FOR
DEFENDANT'S FAILURE TO PRESERVE ESI                    CASE NO.  3:23-cv-04865-RFL

15 or 20 other laptops." (Depo. of Timothy Lasko, 4/10/2025, pp. 22:18-23:24, Exh. E to the Banchero decl.)

> Q:     [W]hy did you put Mr. Graham's laptop and telephone in this office?
>
> A:     It was my responsibility to secure the assets and return them in bulk.
>
> Q:     Did you return them in bulk?
>
> A:     I did.
>
> Q:     When?
>
> A:     We closed that office in '24. Would have been June of '24. I had IT come and collect all devices with data that were left from that office.
>
> Q:     To your knowledge, then, Mr. Graham's laptop was in the locked office in Roseville between the period from September 2022 to June 2024?
>
> A:     Yes.

(*Id.*, p. 26:3-18.) Lasko "oversaw the project" in which Honeywell destroyed Graham's laptop and cellphone along with the other "devices" in the locked storeroom. He collaborated with a project manager, who, Lasko testified, "scheduled IT to come in and dispose of all of the assets." (*Id.,* p. 30:7-31:25.) "[T]hey would have likely just destroyed the equipment," he testified, "ensuring that anything that contains data was destroyed." (*Id.*, p. 32:1-9.)

> Q:     That is[,] all data on the laptops and the telephones?
>
> A:     Yes.

(Id., p. 32:10-14.) [2]

---

[2] At a later point, Lasko offered that he might have dropped the laptop off at FedEx, but he did not "know for sure." (*Id.*, p. 40:13-41:1.) There is no evidence to suggest that he did.

### B. The Court Orders Honeywell to Designate a Rule 30(b)(6) Representative to Testify Concerning the Missing Laptop, Cellphone, and Work Papers from Graham's Office.

After meet-and-confer efforts failed to resolve the Rule 30(b)(6) dispute, the parties submitted a joint letter brief to the Magistrate Judge.  (Banchero decl., Exh. R; Joint Letter on Discovery Dispute: Rule 30(b)(6) Deposition of Defendant, Honeywell International, Inc., 4/11/25 [ECF 70].)  The parties submitted the joint letter brief on April 11, 2025, one day *after* Lasko testified at deposition.  In the joint letter, Honeywell requested that the Court issue a protective order prohibiting the Rule 30(b)(6) deposition, arguing that Graham was improperly seeking "discovery on discovery" and that Lasko's deposition was sufficient.  Contrary to Lasko's testimony, Honeywell repeated, this time to the Court, that the laptop Graham returned was not his, that it had not been destroyed but rather processed by a third-party data company, and that it had been found to be "wiped"— by Graham himself, was the implication—before its return. (*Id.*, p. 6.)  Honeywell's section of the joint letter was silent on the status of Graham's and Bach's cellphones or the text messages that the two exchanged with each other.

Graham's section of the joint letter to the Court recited most of the events described in this motion and argued that there were legitimate grounds to conclude that Honeywell had destroyed relevant evidence and that he was entitled to seek discovery on Honeywell's conduct.

In an order dated April 24, 2025, the Court, Magistrate Judge Kandis A. Westmore presiding, denied Honeywell's request for a protective order and ordered the Rule 30(b)(6) deposition to go forward.  (Banchero decl., Exh. S; Order Regarding 4/11/25 Joint Discovery Letter re Rule 30(b)(6) Deposition, 4/24/25 [ECF 75].)  Citing Graham's 8/31/22 email message requesting that Honeywell "not destroy any documents, emails, saved files or pictures in his system," the Court found that "Honeywell appears to have been on notice to preserve." (*Id.,* p. 2:12.)  The Court ordered Honeywell to produce a corporate witness on the six topics set forth in the deposition notice.

1
2
3
4
5

> The Court is also not persuaded that Plaintiff is under an obligation to identify which documents may have been destroyed. Nonetheless, Plaintiff has identified types of files—located on his company laptop, cellphone, and in his office—that have not been produced, including certain communications pertaining to his contract, as well as calendar events, notes, and an Excel spreadsheet estimating his commission for a transaction at issue in this lawsuit that were located on his laptop but may not have been backed up to his OneDrive.

6
7
8
9
10

(*Id.*, p. 3:6-12.) The Court wrote that Honeywell's "point that Mr. Lasko's individual deposition testimony could overlap with Topics 1 or 6 as a basis for a protective order is not well taken." Graham was "entitled to depose a corporate designee for all noticed topics." (*Id.*, p. 2:28-3:1.)

11

### C. Honeywell Confirms that it Disposed of the Laptop and Cellphone Without Preserving Data.

12
13
14
15
16

Honeywell designated Sarah Sawvell, a paralegal and director of legal operations who assists in-house lawyers with electronic discovery, to testify on its behalf at the Rule 30(b)(6) deposition. (Depo. of Sarah Sawvell, 6/2/25, p. 6:20-8:14, 38:6-40:4; Exh. F to the Banchero decl.)

17

To begin with, she confirmed that Graham returned *his* laptop to Lasko:

18
19

Q:    Was the laptop that Mr. Graham returned to the Roseville office shortly after he was terminated a computer that was assigned to him?

20
21

A:    All my research and conversations with our information IT team indicate that it was, yes.

22
23
24
25

(*Id.*, p. 67:25-68:7.) Next, she explained that "a form with a laptop *thought* to be Andy Graham's arrive[d] in Arizona—and that Arizona is a Honeywell facility; EY [Ernst & Young] was staffed to provide that preservation lab  * * *.   [W]hat I am trying to describe is that the laptop received by EY was attached to a form that folks thought was Andy Graham's; right?

26
27
28

1   * * * *When [EY] opened it, it was not Andy Graham's laptop; it was Gray's laptop.*"  (*Id*, p.

2   70:24-73:11.)[3]

3        A few minutes before the deposition began, Honeywell, for the first time, produced

4   hundreds of pages of documents relating to Graham's laptop, Graham's cellphone, and Bach's

5   cellphone, none of them having anything to do with the *contents* of the devices.  (Banchero

6   decl., ¶18.)  According to the witness, one of the documents shows that a "ticket" that the

7   witness claimed was assigned to Graham's laptop was "closed" in October, 2022, and the

8   "asset" was "disposed"—*i.e.*, "cleared or wiped and then sent back [to a third-party provider]."

9   (Depo. of Sarah Sawvell, p. 42:10-49:18, Exh. F to the Banchero decl.)

10       As for Graham's cellphone, the witness testified that "EY did not receive a mobile

11  phone device, a corporate-issued phone device for Graham in that package.  It was only the

12  laptop that was thought to be Graham's."  (*Id*., p. 95:8-20.)

13       Q:    Did Honeywell make any effort to preserve the information on Mr. Graham's
            cell phone * * *?

14
15       A:    I'm not—I don't have any records or documentation that indicates currently
            where there was a preservation of a forensic image of the mobile device done.
16

17  (*Id*., p. 98:22-99:12.)  When asked whether she had any information to suggest that

18  Honeywell did *anything* to locate Mr. Graham's cellphone subsequent to receiving the

19  December 2, 2022, letter from Graham's counsel, she testified, "I do not have record of – of

20  any preservation activities occurring one way or the other."  (*Id*., p. 125:1-6.)  When asked

21  whether Honeywell was currently in possession of Graham's cellphone, she replied that she

22  was "not aware that we're in possession of his phone.  It's my understanding from my

23  research and correspondence with our IT colleagues that that device, again, was returned to

24  the company that we leased that asset from."  (*Id*., p. 125:18-126:3.)

25
26
27  _____

28  [3] Kevin Gray was a Honeywell sales associate who reported to Graham.

"Q:    Does Honeywell have any current access to the text messages that were resident on Mr. Graham's company-issued mobile phone at the time his employment was terminated?

A:    No, I'm not aware that we do.

(*Id.*, p. 126:4-8.)

### D.    Honeywell Did Not Preserve the Signed Agreements or other Work Papers Graham Kept in his Office.

When Lasko met Graham at his office on September 9, 2022, none of the papers Graham kept in his office were there.  These included agreements Graham had signed with Honeywell, not all of which were produced by Honeywell.  (Graham decl., ¶3.)  Honeywell's attorneys, when pressed to explain, wrote, "Regarding Paper Files left in Andy Graham's Office—Honeywell has been unable to locate any such responsive documents," claiming, incorrectly, that Graham had not requested copies of these documents until more than two years after his discharge.  (Banchero decl., Exh. J; 2/18/24 email message from S. Clawson to E. Banchero.)  "There is no way to determine," the attorney wrote, "whether any such documents ever existed or what happened to them."  (*Ibid.*)

## IV.    ARGUMENT

Rule 37(e)(1) and (2) of the Fed. Rules of Civ. Proc. authorizes a district court to sanction a party for the loss of ESI.  The rule applies when ESI "that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery."  *Jones v. Riot Hospitality Group LLC,* 95 F.4th 730, 734-735 (9th Cir. 2024)(quoting the rule).

-11-

MEMO. POINTS & AUTHORITIES IN SUPP. OF PLAINTIFF'S MOTION FOR RULE 37(e) SANCTIONS FOR
DEFENDANT'S FAILURE TO PRESERVE ESI                    CASE NO.  3:23-cv-04865-RFL

1

2

### A.      Honeywell Did Not Take Reasonable Steps to Preserve Graham's Laptop, Cellphone, or Files.

3

4

5

6

7

8

9

10

11

Immediately upon learning that his employment had been terminated, Graham directed Honeywell's HR department "not [to] destroy any documents, emails, saved files or pictures in my system," a fact the Court found persuasive in ordering the Rule 30(b)(6) deposition to go forward.  (Banchero decl., Exh. S, p. 2:4-8.)  At the same time, Honeywell informed Graham that he was on "legal hold."  (Graham decl., Exh. B.)  A "legal hold" meant that the contents of the laptop and cellphone would be preserved after he returned them.  According to Honeywell's representative, who testified to Honeywell's internal policy, once a "legal hold" is in effect, data is preserved until the dispute is resolved.  (Depo. of Sarah Sawvell, 6/2/25, p. 74:14-75:21, Exh. F to the Banchero decl.)

12

13

14

15

16

17

18

19

20

21

22

As the Court observed in its order of April 24, 2025, "the duty to preserve arises not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation."  (Banchero decl., Exh. S, p.2:9-12, citing *Oracle America, Inc. v. Hewlett Packard Enterprise Co.,* 328 F.R.D 543, 549 (N.D. Cal. 2018).  "Honeywell," the Court concluded, "appears to have been on notice to preserve."  *Id.* at p. 2:12; *see generally Scalia v. County of Kern,* 576 F.Supp.3d 703, 706 (C.D. Cal. 2021)(party has duty to preserve if it has "some notice" that the documents or things in its possession are "potentially relevant to existing or reasonably anticipated litigation"), citing *Leon v. IDX Systems Corp.,* 464 F.3d 951, 959 (9th Cir. 2006)(decision pre-dates 2015 amendment to Rule 37(e)).

23

### 1.      Honeywell Admits that it Destroyed the Laptop Without Preserving Its Contents.

24

25

26

27

28

Lasko testified that the laptop was kept locked in an office with other laptops until June, 2024, when IT "dispose[d] of all of the assets" in the office, "ensuring that anything that contains data was destroyed."  (Depo. of Timothy Lasko, pp. 26:14-27:15; 32:5-12**,** Exh. E to the Banchero decl.)  This was eight months after Graham filed this case.  If the Honeywell

-12-

representative's testimony is to be credited,[4] she believes IT records indicate that the laptop was "disposed" in October, 2022. This was after Graham's discharge and his "do-not-destroy" message. In either event, Honeywell did not take reasonable steps to preserve the laptop.

According to its representative, Honeywell does not make "a full forensic image" of an ex-employee's laptop as a matter of course. (Depo. of Sarah Sawvell, pp. 25:22-26:14, Exh. F to the Banchero decl.) Honeywell produced records, however, indicating that in some cases it *does* request Ernst & Young to preserve forensic data from laptops. As an example, the representative testified that Honeywell "backed up information" on *Bach's* laptop. (*Id.* at 114:13-116:3.) When asked why, she testified, "[T]here are some instances where a full forensic image is needed for a case and for a matter." *Ibid.* If Honeywell took steps to preserve Bach's laptop, it could have taken steps to preserve Graham's laptop. At the least, this testimony demonstrates that Honeywell had systems in place to do so.

**2.     Honeywell Admits that it Destroyed the Cellphone Without Preserving Its Contents.**

Graham's cellphone remained in a locked office until June, 2024, when Honeywell destroyed it along with the other cellphones (and laptops) in the office. Neither Lasko nor the Honeywell representative testified that Honeywell made any effort to retrieve the cellphone during the 20-month period that the cellphone sat in the office, during which Graham served requests for documents in this case. According to the representative's testimony, "EY did not receive a mobile phone device" from Graham, and there is no record indicating that Honeywell "preserv[ed] a forensic image of the mobile device." ** (Depo. of Sarah Sawvell, pp. 98:22-

---

[4] The serial number of the computer on the document that the witness relied on for this testimony is different than the number for Graham's laptop that IT supplied to Graham when he was asked in September, 2022 to return it. (*Compare* Sawvell's testimony, in which she testifies that the number "associated with" Graham's laptop was CA4PLT7VJY7Y2, pp. 42:10-44:11, Banchero decl., Exh. F & Exh. T, *with* Exh. U (laptop's "asset tag" is SCTASK7293561).

1    99:12, Exh. F to the Banchero decl.)  Under the Rule 37(e) test, Honeywell did not take

2    "reasonable steps" to preserve the cellphone or its data.

3          **3.    Honeywell Admits that it Could Not Locate and Did Not Preserve**
               **Files in Graham's Office.**

4

5          The admission is by Honeywell's attorneys in an email message, dated February 18,

6    2025.  (Banchero decl., Exh. J.)

7          **B.    The Contents of the Laptop, Cellphone, and Files Cannot be Replaced.**

8          Lasko testified that Honeywell destroyed Graham's laptop, which Honeywell's Rule

9    30(b)(6) representative confirmed.  Its contents are not available through discovery.  Nor can

10   Graham's office files be replaced.  As Honeywell's lawyer admitted, "Honeywell has been

11   unable to locate" the files.  (Banchero decl., Exh. J.)

12         Honeywell claims that data on the laptop was preserved on OneDrive files, but this

13   does not mean that the contents of the laptop can be "restored or replaced through additional

14   discovery."  (Rule 37(e), Fed. Rules of Civ. Proc.)   A cloud-based back-up system does not

15   excuse Honeywell's decision to destroy the *device*.  There may have been data on Graham's

16   laptop that was not backed-up, which is what Honeywell's representative admitted.  She

17   testified, "I cannot validate whether [Graham] had unique data on his laptop that was saved—

18   *that wasn't saved on his OneDrive account*."  (Depo. of Sarah Sawvell, p. 78:24-79:24, Exh. F

19   to the Banchero decl.)  She testified Graham "may have" synced his laptop contents to

20   OneDrive, but the system does not "do that by default."  (*Ibid*.)

21

22         Honeywell's representative testified that the company uses Verizon as its carrier for

23   company-issued cellphones.  (*Id*., pp. 28:21-30:1.)  Phone records from Verizon "go back a

24   year from the date that the person stopped using the phone.  And then—and then text

25   messages may be available by special request * * * going back one year again from the date

26   the last time the user used the phone."  (*Ibid*.)  Graham stopped using the cellphone in

27

28

September, 2022.  Honeywell made no apparent effort to obtain Graham's text messages or other data from Graham's cellphone, and now it is too late.

When asked whether Honeywell preserved the contents of *Bach's* cellphone, Honeywell's representative testified "no": when Bach was let go in 2023, Honeywell sent his cellphone to its third-party service provider, where the phone was "factory reset upon them receiving the device"—*i.e.*, "wiped."  (*Id.,* pp. 113:23-114:15.)

Data from Graham's cellphone cannot be restored or replaced.

### C.    The Loss of the Laptop, Cellphone, and Files Causes Prejudice, because it Deprives Graham of a Complete Record of Communications he had with Bach and other Honeywell Employee, and a Complete Set of Agreements.

A moving party is "at a disadvantage to show prejudice [under 37(e)(1)] because a moving party who seeks evidence cannot prove that relevant evidence existed but was destroyed."  *John v. County of Lake*, 2020 WL 3630391 (N.D. Cal. 2020), *citing Apple, Inc. v. Samsung Electronics Co.*, 888 F.Supp.2d 976, 993 (N.D. Cal. 2012)(although neither party may ever know contents of destroyed ESI, that messages of key witnesses were destroyed permits reasonable inference that non-spoliating party was prejudiced).  "To show prejudice resulting from the spoliation * * * courts have held that a party must only come forward with plausible, concrete suggestions as to what [the destroyed] evidence might have been."  *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 339 (D. Ariz. 2022)(citations omitted; brackets in original); *Valmarc Corp. v. Nike, Inc.*, 2024 WL 5112441 at *6  (D. Oregon., 2024)("Courts have found spoliation prejudicial where the destruction of evidence forced [the affected party] to rely on incomplete and spotty evidence at trial")(citations omitted; brackets in original); *RG Abrams Insurance v. Law Offices of C.R. Abrams*, 342 F.R.D. 461, 508 (C.D. Cal. 2020)("A party that spoliates evidence is in no position to argue for a presumption of irrelevance as to documents destroyed while on notice of their potential relevance").

The Court, in its order of April 24, 2025, observed that Graham is not "under an obligation to identify which documents may have been destroyed.  (Banchero decl., Exh. S, p.

-15-

3:6-7.) Nonetheless, Plaintiff has identified types of files—located on his company laptop, cellphone, and his office—that have not been produced, including communications pertaining to his contract, as well as calendar events, notes, and an Excel spreadsheet estimating his commission for a transaction at issue in this lawsuit that were located on his laptop but may not have been backed up to his OneDrive." (Banchero decl., Exh. S, p. 3:6-12.)

In addition to these documents, which Graham describes in a declaration filed herewith,[5] of particular importance are missing communications between Bach and Graham concerning the agreement the two reached about Graham's retirement date. In December, 2021, Graham proposed a retirement date of April 1, 2023, telling Bach, "I'm here until I retire."[6] Bach agreed that Graham could stay in his position until his retirement date. At Bach's suggestion, he and Graham later revised the date to June 1, 2023. (Graham Declaration in Supp. of Opposition to Honeywell's Motion for Summary Judgment, ¶5, Exh. C to the Graham declaration [ECF 78-1].) Graham told "everybody" he planned to retire on June 1, 2023— his "entire sales team, my counterparts within the company that I had conversations with, the people on the engineering side of the business. I mean I – all my friends within the company." (Graham depo. 167:10-168:10, Exh. D to the Banchero decl.)

Graham is certain he sent Bach messages concerning his planned retirement date and certain he received messages from Bach about changing the date and assuring Graham he could remain employed until June 1, 2023. Honeywell has produced none of the messages. Graham testified that he believed the Bach messages were emails, but when he learned that Honeywell had not produced the messages he remembers so distinctly, he now believes they could have been text messages from his cellphone. The cellphone may also have included messages

---

[5] Graham decl., ¶ 3.
[6] Graham describes the agreement in his Opposition to Honeywell International, Inc.'s Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment ("Memo. in Opp. to MSJ" [ECF 78]), dated June 25, 2025, pp. 11-12.

-16-

Graham sent to other Honeywell colleagues about his retirement date and Bach's suggesting

that the date be changed to June 1, 2023.  The messages are relevant to the substance of

Graham's claim for breach of contract and to his credibility, because a series of messages would

corroborate Graham's testimony about the agreement.  To the extent such messages informed

Honeywell about Graham's retirement, they are also relevant to Graham's claim for age-

discrimination.[7]

      The prejudice to Graham of the lost text messages is made plain by *Honeywell's* focus on

text messages it demanded that Graham produce.  At the outset of the case, Honeywell served

formal document requests on Graham demanding that he produce "text messages" "regarding

the subject matter of your complaint." (Banchero decl., Exh. V; Defendant Honeywell

International, Inc.'s Request for Production of Documents to Plaintiff, Set One.)    Earlier this

year, in requests for admission, Honeywell requested that Graham admit he "exchanged text

messages with Bach relating to the factual allegations in the complaint."  In response, Graham

admitted that he did so.  (Banchero decl., Exh. W; Plaintiff's Responses and Objections to

Defendant Honeywell International, Inc.'s Requests for Admission to Plaintiff, Set Two.)

Honeywell requested that Graham produce these messages and, in a March 18, 2025 email, any

messages he exchanged with Lasko.  (Banchero decl., Exh. N.)  Graham did exchange text

messages with Bach, using a personal cellphone *after* he was discharged.  (Banchero decl., ¶ 22

& Exh. X.)  The messages relate to the issues in this lawsuit, and they demonstrate that Graham

used a cellphone to communicate with Bach.  It is far from reasonable for Honeywell to claim

that it had no duty to preserve text messages sent during Graham's employment and that the lost

messages are irrelevant, when Honeywell demanded that Graham produce text messages from

his cellphone after he was discharged.

---

[7] See Memo. in Opp. to MSJ, pp. 16-20.

1

2

**V.      SANCTIONS UNDER RULE 37(e)(1) and (2).**

3

**Graham Requests (i) A Jury Instruction Stating that Honeywell had a Duty to
Preserve the Laptop and Cellphone but Did Not Do So, (ii) An Instruction that the
Jury May Infer that the Devices Contained Information Unfavorable to Honeywell;
and (iii) An Award of Attorneys' Fees and Costs for this Motion and Related
Proceedings.**

4

5

6

Under Rule 37(e)(1), "upon finding prejudice to another party from loss of the

7

information," the court "may order measures no greater than to cure the prejudice." *See*

8

*generally Porter v. City and County of San Francisco,* 2018 WL 4215602 at *4-5 (N.D. Cal.

9

2018)(sanction: jury may hear short factual statement regarding spoliation of evidence; moving

10

party awarded attorneys' fees for sanctions motion); *Spencer v. Lunada Bay Boys,* 2017 WL

11

10518023 at *12-13 (C.D. Cal. 2017) (sanction: plaintiff may present evidence and argument

12

at trial as to what evidence was destroyed; moving party awarded attorneys' fees); *Meta*

13

*Platforms, Inc. v. BrandTotal, Ltd.*, 605 F. Supp.3d 1218, 1237-38 (N.D. Cal. 2022)

14

(permissive adverse inference jury instruction); *BalanceCXI, Inc. v. International Consulting*

15

*and Research Group LLC*, 2020 WL 6886258 (W.D. Texas 2020) at *15 ("Courts also

16

routinely award attorney's fees and expenses under Rule 37(e), to cover the time and effort

17

needed to bring the issue of spoliation before the court").

18

Under Rule 37(e)(2), "there is no requirement that the court find prejudice to the non-

19

spoliating party." *Porter,* 2018 WL 4215602 at *3. "'This is because the finding of intent

20

required by the subdivision can support not only an inference that the lost information was

21

unfavorable to the party that intentionally destroyed it, but also an inference that the opposing

22

party was prejudiced by the loss of information that would have favored its position.'" *Ibid.*

23

(*quoting* 2015 Advisory Comm. Notes).

24

"Rule 37(e) does not define 'intent', but in context, the word is most naturally

25

understood as involving the willful destruction of evidence with the purpose of avoiding its

26

discovery by an adverse party.  Because intent can rarely be shown directly, a district court

27

28

may consider circumstantial evidence in determining whether a party acted with the intent required for Rule 37(e) sanction.  Relevant considerations include the timing of destruction, affirmative steps taken to delete evidence, and selective preservation." *Jones*, 95 F.4th at 735 (citations omitted); *see also Valmarc*, 2024 WL 5112441 at *7 (relevant considerations include "the existence of institutional policies on preservation").  "[I]ntent may be inferred where a party is on notice that documents potentially are relevant but fails to take the steps necessary to preserve them * * *." *RG Abrams Insurance*, 342 F.R.D. at 508.  A "[d]efendant['s] failure to comply with the basic rules requiring that [it] preserve evidence" shows intent.  *John,* 2020 WL 3630391 at *7.  In *Scalia,* 576 F.Supp.3d at 707, a case involving the destruction of video recordings, the court, reviewing common-law decisions on spoliation, held that "intent" could be inferred when "defendant comes forward with no explanation as to why it did not attempt to preserve" evidence, calling the inference the "one reasonable conclusion that can be drawn."

Text messages from cellphones, of course, "fit comfortably within the scope of materials that a party may request under Rule 34." *Paisley Park Enterprises, Inc. v. Boxill,* 330 F.R.D. 226, 234 (D. Minn. 2019)(citation omitted).  And, courts have granted sanctions against parties for failing to search and preserve text messages on cell phones." *Pashaie v. H77LA, LLC*, 2024 WL 4800698 at *5 (C.D. Cal. 2024), citing *John,* 2020 WL 3630391 at *6 and *Gorman v. Douglas County Sheriffs' Office,* 2024 WL 1211798 at *8 (D. Or. 2024).  In *Gorman,* the court observed that "[h]ad plaintiff simply produced the contents of his phone at the time they were requested, as he was obliged to do under the Rules, Defendants would not have been prejudiced and would have had no cause to pursue sanctions."  2024 WL 1211798 at *8; *see also Spencer,* 2017 WL 10518023 at *6-*12 (granting, in part, motion for sanctions for spoliation of four text messages from cellphones).

Here, Graham has gone to considerable expense to attempt to locate his laptop and cellphone and the ESI contents of the devices, only to learn that Honeywell disposed of the laptop and cellphone in June, 2024, *during* the pendency of this litigation, or, possibly, as to

the laptop, at the outset of the dispute.  In either case, Honeywell destroyed the devices without preserving their contents.  If Honeywell had simply "produced the contents" of Graham's cellphone and laptop "at the time they were requested, as [it] was obliged to do under the Rules," Graham "would not have been prejudiced and would have had no cause to pursue sanctions." *Gorman,* 2024 WL 1211798 at *8.  Graham's entitlement to sanctions is *a fortiori,* because not only could Honeywell have produced the contents of the lost information from the laptop and cellphone while they were in its possession, not having done so, Honeywell could have *informed* Graham that the information was lost when Graham sought its production.  This would have saved Graham's spending considerable amounts on attorneys' fees to learn that Honeywell had nothing to produce.  Honeywell, however, did not inform Graham that it had destroyed the laptop and cellphone and when, in the face of its silence on the matter Graham requested discovery, it objected.  In fact, Honeywell sought a protective order to prevent the Rule 30(b)(6) deposition from going forward.  This led the parties to file the Joint Letter on Discovery Dispute with the magistrate judge, in which Honeywell, although it must have known by then (Lasko had so testified) that the contents of the devices had been destroyed, did not inform the Court of this fact.  Instead, Honeywell argued that Graham was not entitled to learn what Honeywell had done with the information—it simply "wasn't relevant."  More than this, with amazing aplomb, Honeywell repeated to the Court the claim that Graham had returned an already "wiped" laptop to Ernst & Young.  Honeywell *had* to know that this was false.  Lasko's testimony flatly contradicted Honeywell's position, and when the Court ordered the Rule 30(b)(6) deposition to go forward, Honeywell's representative disavowed the allegation altogether.

Honeywell's Rule 30(b)(6) representative testified to a sophisticated Honeywell policy for the preservation of evidence, including legal-hold software and employees who are charged with gathering, and protecting, evidence relevant to legal disputes. (Banchero decl., Exh. F; Depo. of Sarah Sawvell, pp. 89:20-91:14.)  This is a "relevant consideration" when

-20-

determining "intent" under Rule 37(e)(2). *Valmarc*, 2024 WL 5112441 at *7. Honeywell's

"intent" under Rule 37(e)(2) may also be inferred because Honeywell was "on notice" that the

laptop and cellphone were "potentially relevant" to Graham's claims. Immediately upon

discharge, Graham told Honeywell he wanted everything in his "system" preserved, and

Honeywell informed Graham that it had placed him on "legal hold." Yet, as in *RG Abrams*

*Insurance* and other cases cited in this memorandum, Honeywell failed "to take the steps

necessary to preserve" the laptop and cellphone. Honeywell's "failure to comply with the basic

rules requiring that [it] preserve evidence" shows intent. *John,* 2020 WL 3630391 at *7. Nor

has Honeywell come forward with "an explanation as to why it did not attempt to preserve" the

laptop and cellphone, which is another fact from which the Court may infer that Honeywell

intentionally destroyed the laptop and cellphone. *Scalia,* 576 F.Supp.3d at 707. An intent to

destroy, as in *John,* is "one reasonable conclusion that can be drawn" from these facts. *Ibid.*

Graham requests sanctions under Rule 37(e)(1) and (2). Appropriate sanctions, we

respectfully submit, would include the following:

(1)    A factual statement that Honeywell had a duty to preserve Graham's laptop and

cellphone and that despite this duty, the laptop and the contents of the

cellphone, including text messages between Graham and Bach, are no longer

available. *See, e.g., Porter v. City and County of San Francisco,* 2018 WL

4215602 at *4-5.

(2)    An adverse jury instruction providing that the laptop and cellphone contained

information unfavorable to Honeywell. *See, e.g., Valmarc Corp. v. Nike,*

*Inc.,*2024 WL 5112441 at *6  (D. Oregon., 2024)

(3)    Reasonable costs and attorneys' fees for (a) preparing the Rule 30(b)(6)

deposition notice and related meet-and-confer efforts; (b) preparing for and

conducting the deposition of Tim Lasko; (c) preparing and submitting the Joint

Letter re Discovery Dispute to the magistrate judge, including meet-and-confer

-21-

efforts thereon; (d) preparing for and conducting the deposition of Honeywell's Rule 30(b)(6) witness, Sarah Sawvell; and (e) preparing and submitting the instant motion and a reply brief in support of the motion.  The amount of expenses and attorneys' fees to be determined by a motion to be filed subsequent to an order hereon.

## VI.    CONCLUSION

For all the foregoing reasons, plaintiff, Maxwell A. ("Andy") Graham, requests that the Court grant this motion.


Dated:   July 3, 2025                              _____ /s/ E. Jeffrey Banchero

                                        E. Jeffrey Banchero
                                        BANCHERO LAW FIRM, LLP
                                        Attorneys for Plaintiff,
                                        Maxwell A. Graham

MEMO. POINTS & AUTHORITIES IN SUPP. OF PLAINTIFF'S MOTION FOR RULE 37(e) SANCTIONS FOR
DEFENDANT'S FAILURE TO PRESERVE ESI                    CASE NO.  3:23-cv-04865-RFL