UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAXWELL A GRAHAM,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>HONEYWELL INTERNATIONAL INC.,<br><br>　　　　　Defendant. | Case No. 23-cv-04865-RFL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 76-77 |

　　　　The parties do not dispute the following facts. Honeywell hired Maxwell Graham as a sales manager in 2019. Two years later, as part of a reorganization, the company instructed him to reapply or else he would lose his job. Graham negotiated a higher salary and incentive compensation that he could earn under the company's Sales Incentive Plans ("SIPs") before signing a new employment agreement in July 2021. About a year later, the company let him go as part of a largescale reduction in force ("RIF"). And a year after that, he commenced this action, alleging that Honeywell improperly terminated his employment and failed to pay him all the wages that he had earned. The parties now cross-move for summary judgment, with Honeywell moving on all of Graham's claims and Graham moving on just one of his claims. For the reasons set forth below, the motions are **GRANTED IN PART** and **DENIED IN PART**. This Order assumes that the reader is familiar with the facts of the case, the applicable legal standards, and the parties' arguments.[1]

　　　　***Breach of Contract.*** Graham premises this claim essentially along two alleged breaches: (1) Honeywell breached Graham's employment agreement when it terminated his employment before his chosen retirement date of June 1, 2023; and (2) Honeywell breached the SIPs when it failed to pay Graham all the incentive payments that he had earned in connection with the

---

[1] All citations to page numbers in filings on the docket refer to ECF page numbers except for citations to deposition transcripts.

Hamilton and Starbucks-China deals and OnTrac account.

As to the premature-termination breach, the undisputed evidence shows that Graham entered into an employment agreement on July 30, 2021, which expressly stated that his "employment with Honeywell will be on an 'at will' basis." (*See* Dkt. No. 76-6 at 62.)  Because Honeywell employed Graham on an at will basis, it did not breach the agreement when it terminated his employment in September 2022.  *See Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384, 392 (2006) ("An at-will employment may be ended by either party at any time without cause, for any or no reason, and subject to no procedure except the statutory requirement of notice." (citation and quotation marks omitted)).  That Graham and Honeywell may have orally agreed *before* Graham entered into the July 30 agreement that Graham could choose his own retirement date does not alter this conclusion.  The terms of the July 30 agreement superseded any earlier agreed-to terms, and that written agreement does not contain any term permitting Graham to select a retirement date.  *See Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*, 55 Cal. 4th 1169, 1174 (2013).

In his opposition brief, Graham points to a December 2021 oral agreement (which postdates the July 2021 written agreement) in which Honeywell purportedly agreed that Graham could remain employed through his chosen 2023 retirement date.  As Graham's counsel conceded at oral argument, however, Graham did not allege the existence or breach of this December 2021 agreement in the operative complaint.  Graham cannot, therefore, pursue a breach-of-contract claim based on this unpled agreement.  *See, e.g.*, *Pickern v. Pier 1 Imps. (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006) (affirming district court's rejection of allegations presented for first time in opposition to motion for summary judgment).

Accordingly, the Court **GRANTS** summary judgment in favor of Honeywell on the portion of the breach-of-contract claim concerning the allegedly premature termination of Graham's employment.

As to the SIPs breach, Honeywell primarily argues that the SIPs are not enforceable contracts.  But the SIPs contain descriptions of how incentive payments will be calculated and

awarded (*e.g.*, sales metrics measured against quotas, potential incentive payments pegged to salary, application of "payout curves"). Graham also attests that he and other salespeople used the SIPs to calculate how much they anticipated that they would earn. (*See* Dkt. No. 78-1 ¶¶ 3-4.) Though the SIPs permit Honeywell to make changes to the incentive payments program, the SIPs require those changes to be applied on a "go-forward basis" and do not appear to permit Honeywell to change the rules after the work has been done on the relevant sales:

> The Company reserves the right to change or amend the metrics and / or Terms and Conditions sections of the SIP, or cancel or terminate the SIP, at any time and for any reason . . . . Notwithstanding the preceding paragraph, the Sales Leader and the HR Leader for a Participant's Local SBU/GBE may change or amend a Participant's specific plan and/or metrics . . .; provided, however, that any such change shall be applied on a go-forward basis . . . .

(Dkt. No. 76-8 at 85.)[2] Honeywell contends that this language permitting it to make changes to each SIP indicated a lack of intention to form an enforceable contract, but unlike the agreements in the cases on which Honeywell relies, each SIP appears to describe itself as an enforceable agreement. The end of each SIP contains an "AGREEMENT" indicating that the employee "agree[s] to all the terms and conditions of the" SIP and requiring the employee's signature. (*See* Dkt. No. 76-8 at 90.) Honeywell counters that Graham did not sign the SIPs, but Graham did sign the July 2021 employment agreement, which expressly incorporates the SIPs. (*See* Dkt. No. 76-6 at 62 ("You will be eligible to participate in the Sales Incentive Plan (SIP) . . . . Details of the plan will be provided by your manager upon hire.").) Moreover, there is a triable issue as to whether Graham accepted that agreement as a unilateral contract by performing the work described and relying upon Honeywell's representations as to how his compensation would be calculated. Drawing all reasonable inferences in Graham's favor, as required on summary judgment, a reasonable jury could conclude that the SIPs constitute enforceable contracts.

---

[2] The 2021 and 2022 SIPs contain materially identical language concerning the provisions of the SIPs that are relevant to this Order. (*See also* Dkt. No. 78 at 13 n.5 ("The 2021 and 2022 SIPs are virtually identical . . . .").) Accordingly, this Order contains citations to the 2022 SIP only.

3

Honeywell also argues that payments under the SIPs do not qualify as commissions under California law. But Graham's claim for breach of the SIPs depends simply on whether Honeywell agreed to pay Graham under the SIPs and failed to do so, regardless of whether the payments otherwise qualified as commissions.

Honeywell next argues that it actually complied with its obligations under the SIPs. With respect to the Hamilton deal, Honeywell asserts that it paid Graham under a Large Order Bonus Plan ("LOBP") instead of under the SIPs because doing so resulted in a payment that exceeded what Graham would have earned under the then-governing SIP. But as Honeywell conceded at oral argument, the details of the LOBP had not yet been announced before the Hamilton deal closed, though the LOBP was later made retroactively effective to a date prior to the closing of the Hamilton deal. Moreover, Honeywell did not share the terms of the LOBP with Graham until after the deal closed. That timeline creates a genuine dispute of material fact as to whether the LOBP even applied to the Hamilton deal. Further, performing the calculations to verify whether Graham received more under the LOBP than he would have received under the then-governing SIP presents a factual question that the Court cannot resolve on this record. (*See* Dkt. No. 83 at 9 (Honeywell describing calculation disagreement between its employee's deposition testimony and Graham's expert's conclusions).)

With respect to the Starbucks-China deal, Honeywell points to each SIP's "Plan Governance" section. Under that section, the "Sales Leader and HR Leader for the Participant's Local SBU/GBE, acting together, shall resolve all non-routine questions or disputes about Participant-level claims and issues (e.g., resolve questions about participation, quotas, metrics, split payouts, or payout calculations, make necessary findings of fact, etc.)." (*See* Dkt. No. 76-8 at 77 (emphasis omitted).) Honeywell explains that it followed this dispute-resolution mechanism after an associate working with Graham raised a concern about his payments relating to the Starbuck-China deal, which resulted in Honeywell issuing a corrective payment to Graham. Graham counters that this process did not comply with the requirements of the "Plan Governance" section because, under that section, the "Sales Leader and HR Leader" resolve

4

disputes, but those individuals did not resolve the Starbucks-China dispute.  According to Graham at oral argument, Honeywell employee Lisa Hamilton was the HR Leader, and David Bach, his supervisor, was the Sales Leader, but neither was involved in resolving the Starbucks-China dispute.  Honeywell responded that Peter Jofriet, its Senior Director of Sales Excellence, resolved the dispute and was the Sales Leader referenced in the SIPs.  Yet Honeywell also conceded at oral argument that Jofriet was undisputedly not the leader for the Local SBU/GBE for Graham, as his work was companywide.  That is relevant because the SIPs define Sales Leader as "the SBU/GBE sales, or Commercial Excellence leader for the Participant."  (*See id*. at 89.)  Further, while this definition does not specify whether the position is a local or companywide position, the terms "Local SBU/GBE" and "for the Participant" would support an interpretation requiring the involvement of a local sales leader.  Therefore, at the very least, the SIPs are ambiguous as to whether Jofriet was the Sales Leader responsible for resolving disputes.  Accordingly, a genuine dispute of material fact precludes the Court from concluding that Honeywell complied with the "Plan Governance" section (and therefore complied with its obligations under the SIPs) in issuing a corrective payment to Graham in connection with the Starbucks-China deal.

With respect to the OnTrac account, Honeywell conceded at oral argument that it never addressed Graham's incentive payment dispute through the SIPs' "Plan Governance" procedures.  Graham did, however, raise the issue with Bach, his supervisor.  (*See* Dkt. No. 76-10 at 117:23-118:1.)  Honeywell nevertheless insists that Graham bore the burden of formally initiating the dispute-resolution process.  But the SIPs do not discuss how these processes must commence.  (*See* Dkt. No. 76-8 at 77.)  Therefore, there is a genuine dispute of material fact as to whether the SIPs required Graham or Bach (or someone else) to start the process.

Accordingly, the Court **DENIES** summary judgment on the portion of the breach-of-contract claim concerning the alleged failure to make incentive payments under the SIPs.

*Unpaid Wages.*  Graham premises this claim on Honeywell's alleged failure to pay him: (1) through his chosen retirement date; and (2) as required under the SIPs.  *See* Cal. Lab. Code §

5

201(a).  The claim, therefore, rises and falls with the breach-of-contract claim.  Honeywell permissibly terminated Graham's at-will employment before his chosen retirement date, but a genuine dispute of material fact precludes the Court from concluding whether he received all the payments owed under the SIPs.  Accordingly, to the extent premised on payments owed after the date of discharge, the Court **GRANT**S summary judgment in favor of Honeywell, and to the extent premised on payments required under the SIPs, the Court **DENIES** summary judgment.

*Quantum Meruit.*  Graham premises this claim on Honeywell's alleged failure to pay him as required under the SIPs.  Honeywell argues that the SIPs (assuming they are enforceable contracts) preempt this claim because *quantum meruit* necessarily applies only where no express contractual provisions governing the same compensation exist.  *See Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1405 (9th Cir. 1996) ("[A] party to an enforceable contract may not seek recovery for a contract breach by resort to extra-contractual theories such as quantum meruit." (citations omitted)).  But as discussed above, a genuine dispute of material fact precludes the Court from concluding whether the SIPs constitute enforceable contracts.  If they do not, then the *quantum meruit* claim may proceed.  And until a fact-finder renders such a determination, Graham may pursue the claim as an alternative to his contract claim.  *See In re De Laurentiis Ent. Grp. Inc.*, 963 F.2d 1269, 1272 n.3 (9th Cir. 1992) ("As long as [a plaintiff] seeks only one recovery, it is entitled to pursue both contract claims and quantum meruit claims arising out of the same transaction." (citation omitted)); *see, e.g.*, *1440 Sports Mgmt. Ltd. v. PGA Tour, Inc.*, No. 22-cv-02774-TLT, 2023 WL 7280444, at *8 (N.D. Cal. Oct. 6, 2023) (denying summary judgment on *quantum meruit* claim because "the existence of the oral contract . . . is still disputed").

Honeywell also argues that the two-year statute of limitations bars the *quantum meruit* claim.  *See* Cal. Civ. Proc. Code § 339(1); *Stanford Health Care v. USAble Mut. Ins. Co.*, 548 F. Supp. 3d 909, 912 (N.D. Cal. 2021).  It terminated Graham's employment on September 2, 2022, and while Graham commenced this action *less* than two years later, he did not bring his *quantum meruit* claim until he filed an amended complaint *more* than two years later.  (*See* Dkt. Nos. 1,

6

43.) But as Graham correctly notes, and as Honeywell does not contest in its reply brief, the timing of Graham's *quantum meruit* claim relates back to when he commenced this action because the claim "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." *See* Fed. R. Civ. P. 15(c)(1)(B).

Accordingly, the Court **DENIES** summary judgment on the *quantum meruit* claim.

***Waiting Time Penalties.*** This is the sole claim on which both sides move for summary judgment. Graham premises this claim on statutory penalties imposed as a result of Honeywell's alleged failure to pay him his earned payments under the SIPs at the time of employment termination. *See* Cal. Lab. Code §§ 201(a) (payment due upon termination), 203(a) (penalties imposed for "willful[]" failure to pay). Honeywell argues that the penalty claim under Section 203 derives from the unpaid wages claim under Section 201 and therefore fails with the Section 201 claim. But the Court denies summary judgment on the Section 201 claim, for the reasons noted above, so this argument fails.

Honeywell also argues that it may offset overpayments issued to Graham in connection with the Hamilton deal before his employment terminated against any waiting time penalties that accrued post-termination. As explained above, however, there is a genuine dispute of material fact concerning whether Honeywell properly calculated Graham's incentive payments in connection with the Hamilton deal.

Honeywell next argues that it did not "willfully" fail to pay Graham at the time of termination because it nevertheless paid him within the timeline permitted under the SIPs. However, the SIPs expressly provide for accelerated payment as "required by applicable law," and California law required payment at the time of employment termination. (*See* Dkt. No. 76-8 at 79.) Honeywell therefore did not pay Graham within the timeline required under the SIPs.

Honeywell similarly argues that Graham had not actually "earned" any unpaid incentive payments at the time of employment termination because the SIPs permitted Honeywell to issue payments on a set timeline. But again, as the SIPs themselves acknowledge, applicable law could accelerate that timeline, and California law did so here. Further, the payment timeline

7

does not factor into whether Graham earned an incentive payment; rather, an employee earns "incentive compensation (thereby necessitating payment upon resignation or termination)" when they "satisf[y] the condition(s) precedent to receiving incentive compensation." *See Schachter v. Citigroup, Inc.*, 47 Cal. 4th 610, 621 (2009) (citation omitted). The timeline for payment is not a condition precedent for an employee to satisfy.

Finally, Honeywell argues that there is a good-faith dispute as to whether any SIP payments were due when it terminated Graham's employment. "[T]he operative question is simply whether, based on the state of the law [at the relevant time, Honeywell] has presented an objectively reasonable defense that is not marred by bad-faith conduct." *Hill v. Walmart Inc.*, 32 F.4th 811, 817 (9th Cir. 2022). As discussed above, there are genuine disputes of material fact as to whether Honeywell owed Graham any incentive payments at the time of termination in connection with the Hamilton and Starbucks-China deals and OnTrac account. Those disputes indicate that there is a genuine dispute of material fact as to whether Honeywell has an objectively reasonable defense. At the same time, evidence indicates that Honeywell knew that California law required it to pay Graham immediately upon termination as early as September 6, 2022 (four days post-termination), and that it nevertheless delayed paying him until September 23, 2022. (*See* Dkt. No. 77-2 at 21-26, 29-30.) That delay creates a genuine dispute of material fact as to whether Honeywell acted in bad faith in waiting until September 23 to pay Graham.

Accordingly, in light of the genuine disputes of material fact discussed above, the Court **DENIES** summary judgment to both Honeywell and Graham on the waiting time penalties claim.

*Age Discrimination.* Graham premises his two age discrimination claims on Honeywell's alleged termination of his employment because of his age. "When assessing claims of age discrimination under [the Fair Employment and Housing Act] and [the Age Discrimination in Employment Act] . . . courts use the *McDonnell Douglas* burden-shifting framework on summary judgment." *Viteri-Butler v. Univ. of Cal. Hastings Coll. of the L.*, 650 F. App'x 386, 387 (9th Cir. 2016) (citations omitted); *see also Guz v. Bechtel Nat'l, Inc.*,

8

24 Cal. 4th 317, 354 (2000) ("Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes." (citation omitted)). The framework proceeds in three steps:

> [T]he employee must first establish a prima facie case of age discrimination. If the employee has justified a presumption of discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment action. If the employer satisfies its burden, the employee must then prove that the reason advanced by the employer constitutes mere pretext for unlawful discrimination.

*Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citations omitted).

Beginning with step one of the framework, to "establish a prima facie case using circumstantial evidence, the employees must demonstrate that they were (1) members of the protected class (at least age 40); (2) performing their jobs satisfactorily; (3) discharged; and (4) replaced by substantially younger employees with equal or inferior qualifications." *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000) (citation omitted). Where, as here, "the discharge results from a general reduction in the work force due to business conditions," a plaintiff need not necessarily show replacement by a substantially younger employee and may instead "show through circumstantial, statistical, or direct evidence that the discharge occurred under circumstances giving rise to an inference of age discrimination." *See Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1421 (9th Cir. 1990) (citations omitted).

Honeywell argues that Graham cannot establish a *prima facie* case because his position was eliminated entirely, and most of his responsibilities were transferred to someone about a year younger in age. But Honeywell does not dispute that at least some of Graham's accounts were transferred to an individual more than 20 years Graham's junior. (*See* Dkt. No. 76 at 29 n.2.) That replacement is sufficient to establish a *prima facie* case. *See also Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) ("The amount [of evidence] that must be produced in order to create a *prima facie* case is very little." (citations and quotation marks omitted)). Drawing reasonable inferences in Graham's favor, as required on summary judgment, there is a

genuine issue of material fact as to whether the much younger employee was one of Graham's replacements. Honeywell has not identified evidence in the record about the size or significance of the accounts that were transferred to that employee. Accordingly, the Court cannot conclude as a matter of law that the duties transferred were so insignificant that this employee did not replace Graham.

Honeywell also argues that no evidence indicates the existence of a causal connection between Graham's age and employment termination. But at the summary judgment stage, Graham needs only to present a *prima facie* case. *See Shelley v. Geren*, 666 F.3d 599, 608 (9th Cir. 2012) (plaintiffs must prove "but-for" causation at trial, not at the summary judgment stage); *see, e.g.*, *K.H. v. Sec'y of the DHS*, 263 F. Supp. 3d 788, 798 (N.D. Cal. 2017) ("Under *Shelley*, Plaintiffs need not show that age was the but-for cause of the field office closures to defeat summary judgment; that is their burden at trial.").

Turning to step two of the framework, Honeywell argues that the "same-actor inference" satisfies its burden to articulate a legitimate, non-discriminatory reason for terminating Graham's employment. "[W]here the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory motive." *Schechner v. KPIX-TV*, 686 F.3d 1018, 1026 (9th Cir. 2012) (citation omitted). The evidence here shows that Honeywell employee Miroslav Kafedzhiev approved Graham's rehiring in July 2021 and instructed Bach to terminate Graham's employment in 2022. (*See* Dkt. No. 76-10 at 123:21-124:18, 197:16-198:1.) Graham counters that Kafedzhiev "merely approved Graham's salary" and did not actually issue the decision to rehire him. (*See* Dkt. No. 78 at 24 n.14.) But Bach affirmatively testified that Kafedzhiev approved the hire:

> Question: Is it fair to say that Mr. Kafedzhiev approved that hire [of Graham in July 2021] as well?
>
> Answer: Yes. He's making that request to the president of whom he reported.

(Dkt. No. 76-10 at 197:23-198:1.) Honeywell also explains that it discharged Graham as part of

10

a largescale RIF.  Bach testified that Kafedzhiev selected Graham for the RIF because Graham "didn't get along well" with Jofriet and the human resources department.  (*See id.* at 126:15-25.)  Accordingly, Honeywell meets its burden at step two.

At step three of the framework, a "plaintiff may demonstrate pretext in either of two ways:  (1) directly, by showing that unlawful discrimination more likely than not motivated the employer; or (2) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable."  *See Earl v. Nielsen Media Rsch.*, 658 F.3d 1108, 1112-13 (9th Cir. 2011) (citation omitted).  Ultimately, the "burden to raise a triable issue of pretext is hardly an onerous one."  *See France v. Johnson*, 795 F.3d 1170, 1175 (9th Cir. 2015) (citation omitted).

Graham relies on "direct" evidence of pretext.  Bach testified that:  (1) Kafedzhiev (the employee who directed Bach to include Graham in the RIF) knew Graham intended to soon retire; (2) the RIF "was a cost cutting move for the corporate [profit and loss]"; (3) Honeywell included Graham in the RIF as part of an "HR trick" to "legally eliminate people that they want to select to eliminate"; and (4) Graham's salary, at the time of the RIF, "was out of the standard salary range for people in his level" and at a "significant" percentage "over the norm."  (*See* Dkt. No. 78-4 at 132:20-24, 134:6-10, 215:7-217:19.)  Graham also testified that on a call with Bach post-termination, Bach told him that:  (1) among all of Bach's subordinates, Graham was "the one that can most take this hit"; and (2) Graham was "going to be retiring anyway in six or seven months."  (*See* Dkt. No. 78-5 at 162:25-164:17.)  And in an email dated shortly before Honeywell rehired Graham in July 2021, Kafedzhiev described an "agreement with [Bach] and [Graham] to identify and build a successor for [Graham] within the next 12-18 months" because Graham "was happy to retire" upon identification of a "ready successor."  (*See* Dkt. No. 78-4 at 35-36.)  This evidence satisfies Graham's burden.  *See* Cal. Gov't Code § 12941 ("The Legislature declares its intent that the use of salary as the basis for differentiating between employees when terminating employment may be found to constitute age discrimination if use of that criterion adversely impacts older workers as a group . . . ."); *see, e.g.*, *Shelley*, 666 F.3d at

11

609-10 (testimony concerning inquiries about projected retirement dates during hiring period supported inference of pretext).

Honeywell contests the sufficiency of this evidence and characterizes any statements about its purported motivations in discharging Graham as mere "stray remarks." (*See* Dkt. No. 83 at 15-16.) But Graham has amassed enough evidence to create at least a genuine dispute of pretext, and Honeywell's opposition on this point is better addressed by the fact-finder at trial. *See also France*, 795 F.3d at 1175 ("[I]t should not take much for a plaintiff in a discrimination case to overcome a summary judgment motion." (citations omitted)).

Accordingly, the Court **DENIES** summary judgment on the age discrimination claims.

***Fraudulent Concealment.*** Graham premises this claim on Honeywell's alleged failure to disclose the details and effect of the LOBP, which it applied to calculate his incentive payment from the Hamilton deal. Honeywell argues that it did not actively conceal the LOBP because: (1) the SIPs referenced "Large Orders"; and (2) Graham testified that he recalled discussions about the LOBP in the fall of 2021 (pre-dating the closing of the Hamilton deal). But as discussed above, Honeywell did not disclose the terms of the LOBP to Graham until after the deal closed. That post-closing disclosure creates a genuine dispute of material fact as to whether Honeywell concealed the LOBP.

Honeywell also argues that it maintained no obligation to disclose the LOBP specifics because payments under the SIPs were discretionary, and the SIPs expressly reserved Honeywell's right to amend the SIPs' terms at any time. But Graham presents evidence demonstrating that he told Bach and Kafedzhiev in the fall of 2021 that he "did not expect to be bruised" by reduced compensation from the Hamilton deal in connection with changes that the company was making with how it calculated compensation, and he asked for assurances to that effect. (*See* Dkt. No. 78-1 ¶ 7; *id.* at 7, 10.) He further attests that Bach, Kafedzhiev, and Jofriet reassured him that he and his team would receive the compensation originally expected for the work done in 2021, though those payments might not be made until 2022. (*See id.* ¶ 8.) Bach and Jofriet also both testified that they understood the "bruised" comment to refer to Graham's

concern of reduced compensation.  (*See* Dkt. Nos. 78-4 at 110:1-11, 78-7 at 75:17-76:8.)  This evidence creates a genuine dispute of material fact as to whether Honeywell was under a duty to disclose the details of the LOBP to Graham before it eventually did so.

Finally, Honeywell argues that Graham suffered no damages from the alleged concealment because it paid him more under the LOBP than he would have received under the SIPs.  But as discussed above, performing the calculations to verify whether Graham received more under the LOBP than he would have received under the then-governing SIP presents a genuine dispute of material fact that cannot be resolved on this record.

Accordingly, the Court **DENIES** summary judgment on the fraudulent concealment claim.

***Unfair Competition Law.***  The UCL provides for equitable relief only.  *See Key v. Qualcomm Inc.*, 129 F.4th 1129, 1141 (9th Cir. 2025).  To obtain any equitable relief in federal court, a plaintiff must lack an adequate legal remedy.  *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).  Honeywell argues that the UCL claim fails because Graham did not allege in the operative complaint that he lacked an adequate legal remedy.  Graham counters by homing in on his breach-of-contract claim—if the Court (or a fact-finder at trial) agrees with Honeywell that the SIPs are not enforceable contracts, then he lacks an adequate remedy at law for the incentive payments at issue.

The Court agrees with Graham.  If the SIPs are not enforceable contracts, then he may not pursue a breach-of-contract claim, suffered no "damages" from Honeywell's failure to pay him as expected for the work performed, and necessarily lacks any legal remedy for that failure.[3] *Cf. Barrett v. Apple Inc.*, 523 F. Supp. 3d 1132, 1157 (N.D. Cal. 2021) (dismissing quasi-

---

[3] Graham's unpaid wages claim under Section 201 of the California Labor Code would not render legal remedies adequate in the absence of an enforceable contract because he could not pursue that claim if he lacked an enforceable contract for his incentive payments.  *See Oman v. Delta Air Lines, Inc.*, 9 Cal. 5th 762, 781 (2020) ("The compensation owed employees is a matter determined primarily by contract."); *Koehl v. Verio, Inc.*, 142 Cal. App. 4th 1313, 1330 (1st Dist. Div. 2 2006) ("The right of a salesperson or any other person to a commission *depends on the terms of the contract* for compensation." (emphasis added) (citations omitted)).

contract claim under *Sonner* where "Plaintiffs have not sufficiently alleged that Apple's Terms and Conditions are invalid or are in any way unenforceable"). In that scenario, only equitable relief could remedy Honeywell's alleged failure to pay Graham for the work he performed. To be sure, the mere failure of claims for legal relief does not render legal relief inadequate. *See, e.g.*, *Key*, 129 F.4th at 1142 ("Plaintiffs stated an exclusive dealing claim under the Cartwright Act but failed to prove it at summary judgment. Their failure to prove their Cartwright Act claim, however, does not make that remedy inadequate." (citations and quotation marks omitted)). But in a situation where no enforceable contract even exists, the deficiency does not stem from a plaintiff's unsuccessful pursuit of a breach-of-contract claim; rather, no claim for legal relief is available. *See also Baker Valley Unified Sch. Dist. v. Superior Ct.*, No. E046840, 2008 WL 5385229, at *1 (Cal. Ct. App. 4th Dist. Div. 2 Dec. 26, 2008) ("[Q]uantum meruit is not available where there *is* a valid contract between the plaintiff and defendant, because the remedy serves to ameliorate possible injustice where services are rendered or a benefit conferred in the absence of a valid contract.").

Honeywell also argues that the UCL claim rises and falls with Graham's other claims and therefore fails with those claims. But Graham's other claims survive Honeywell's motion, so the UCL claim survives too.

Accordingly, the Court **DENIES** summary judgment on the UCL claim.

***Punitive Damages.*** Graham includes punitive damages among the categories of requested relief enumerated in the operative complaint. Honeywell argues that the Court should dismiss the request for punitive damages because the "record is devoid of any evidence as to age-related conduct at all, much less any that was malicious, oppressive, or in reckless disregard of Graham's rights." (*See* Dkt. No. 76 at 33-34.) But Graham may pursue punitive damages in connection with his fraudulent concealment claim, and that claim survives Honeywell's motion. *See Nissan Motor Acceptance Cases*, 63 Cal. App. 5th 793, 829 (4th Dist. Div. 3 2021).

Accordingly, the Court **DENIES** summary judgment on the request for punitive damages.

*Evidentiary Objections.* The parties lodged objections to some of each other's evidence. The Court **DENIES** these objections because all of the evidence relied upon by this Order meets the relaxed evidentiary requirements applicable on summary judgment. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents." (citations omitted)).

*Conclusion.* For the foregoing reasons, the motions are **GRANTED IN PART** and **DENIED IN PART** as follows:

- **Breach of Contract:** Granted in favor of Honeywell to the extent it concerns the allegedly premature termination of Graham's employment. Denied to the extent it concerns the alleged failure to make incentive payments required under the SIPs.
- **Unpaid Wages:** Granted in favor of Honeywell to the extent it concerns payments allegedly owed after the date of termination. Denied to the extent it concerns the alleged failure to make incentive payments required under the SIPs.
- **Quantum Meruit:** Denied.
- **Waiting Time Penalties:** Denied.
- **Age Discrimination:** Denied.
- **Fraudulent Concealment:** Denied.
- **UCL:** Denied.
- **Punitive Damages:** Denied.

IT IS SO ORDERED.[4]

Dated: September 22, 2025

RITA F. LIN
United States District Judge

---

[4] The Court expresses no view on any arguments presented in the parties' briefing that is not expressly addressed in this Order.